All right, this afternoon we'll hear the North Carolina Democratic Party against Berger, and I guess we begin with Mr. Worf. Thank you, Your Honor. May it please the Court. My name is Martin Worf, and along with Ryan Park for the State, we represent the appellants in this matter. The question before the Court is whether political parties in a partisan judicial election have a constitutional right to a government-regulated method of narrowing the field of candidates or to the right to identify a nominee on the general election ballot. By answering in the affirmative, the trial court erred, and this Court should reverse for two primary reasons. I didn't quite understand your issue. You said the second issue was they were challenging the fact that they let their names be labeled on the ballot. I thought the issue here was eliminating a primary, period. Yes, Your Honor. We believe that is part of the issue. What other issue is there? That the plaintiffs contend numerous times in their appellees' brief and the district court noted that there should be some recognition of a nominee on the general election ballot, in particular when self-identified affiliated or unaffiliated candidates list their own affiliation on the ballot. Is that an actual separate issue they're raising? I didn't understand that. I thought their issue basically is they did not want to have the primary abolished, which leaves the candidates to get on the ballot, and the candidates are allowed by law otherwise to have their identification next to their name. But that could be taken away or not, but I didn't know they were raising that as an issue. Well, they certainly did not in the complaint, as far as we can tell, Your Honor. The complaint focused solely on the right to choose a standard bearer through some sort of primary or winnowing. Well, their argument about the right to choose the standard bearer, it seems to me, is intimately involved in the way you stated the issues. That is, the standard, each of these candidates on the general election ballot is going to be identified by a D or an R or an unaffiliated or if there's some minor parties. Isn't that correct? Your Honor, every candidate who appears on the general election ballot will have a label if they consider themselves to be affiliated. If they self-identify. Yes, Your Honor. And the D stands for self-identifying as a Democrat. I think that's correct. And the R stands for self-identifying as a Republican. Yes. And the unaffiliated, is there unaffiliated, is that what they call it? U stands for unaffiliated. There would be, yes. So that their argument is that they should be able to choose who they're going to be associated with. And it shouldn't have the indication to the general public that these Ds constitute the Democratic nominee as they have in every other general election when there's been a D on the general election ballot next to a candidate. And what the State says is, no, that doesn't count anymore because we have changed the law and D and R and these other designations only show how you individually identify yourself. Isn't that correct? That's not exactly correct. No. I'm sorry. What's wrong about it? The notion that self-identification occurs in every race in North Carolina, not just the races under this Act. Yeah, yeah, yeah, yeah. So that when a But that's a change in the law. No. Prior to this, when you, four years ago or whenever the last election was and every other election, if you had a D next to your name, it meant you were the nominee of the Democratic Party. Respectfully, no. No. I don't think it did mean that on the general election ballot. It did. It did not. You ran in a Democratic and Republican primary and then you went on the general election ballot with a D next to your name and what did it mean? It meant that you self-identified as a Democrat on your voter registration card. But you couldn't get there unless you got through a primary that the Democrats selected. So it wasn't just that you self-identified, it was that the party selected that candidate as the standard bearer. Correct? If there was more than one self-identified Democrat running, then yes, there would have been a primary vote. But many times throughout North Carolina's history, there has not been more than one. Right. Because there was a primary. Only the person that had won the primary could have their self-identified D be on the general election ballot next to their name, right? Yes, but for the reason that the primary by its nature has a, as Judge Niemeyer pointed out, a winnowing effect. Right. To the general election, to the candidates on the ballot. And I think that the plaintiffs, to begin with, would prefer a primary. But the law doesn't let them have that. So they said, all right, well, we don't want to be associated with people who just designate themselves as D, and it misstates to the general public that they're a nominee of our group. That's their claim. I mean, it doesn't go anywhere, but that's their claim. I think that is their claim, yes. Well, if that's their claim, I didn't understand it quite that way, and maybe this is clarifying, but if that's their claim, doesn't that run squarely into Washington State Grange? It does, Your Honor. Where they self-identified, and those identifications were not indicative of the party selection, but the self-identification and the confusion was just the confusion Judge Motz identified. That's correct. The parties in Grange argued. I thought they were making that. I thought they were, all right, go ahead. But I don't want to confuse. I was trying to get started on an issue which I thought they were raising, and if they're raising it that way, we'll hear from them more. But you can make your argument as you wish. Well, I appreciate the question, Judge Niemeyer, and I think it goes to the fact that, indeed, with this being a facial challenge, you saw that in Washington State Grange as well, and the voter confusion that was raised by the parties in that particular issue, the court discounted on a facial challenge and said, We cannot speculate about that, and the potential for confusion on a general election ballot is not something that affects a substantial right of the particular party. And this court in Marcellus also held that there is no First Amendment right to have a particular nominee identified on the ballot as such. Well, the court has said that regularly, I mean, that the ballot is controlled by the state and it's not a mechanism for campaigning or giving a message. It's a mechanism for identifying for the public, permit the public to make the selection, and that outside campaigning can do the rest. And in Marcellus, we did face a situation where the state eliminated any designations for people of local candidates and allowed the statewide. And while it was somewhat peculiar, we upheld that as within the discretion of the state in providing for the elections. Okay, well. Can I ask you a clarifying question? Is there any other, you're more familiar with state law than I am, is there any other mechanism that would permit a political party to identify its people under the, in the general election ballot, the way this now exists? By identification, you mean saying that they're the party nominee? Choice of the party. No, there's no way to do that. You mean if the party wanted to caucus and select a candidate, could they comply with other laws in North Carolina and get that person on the ballot? Yes, and I may have. North Carolina is a party nominee, though. Yes, I may have misunderstood. I may have misunderstood the question. Yours was to the ballot itself. There is no reflection on the North Carolina ballot that a particular party is a nominee of, I mean a particular candidate is a nominee of the party. But as to the selection process for their nominee, yes. My question was if the party selected a candidate. Last year, last time they selected a candidate in a primary, but the primary has been eliminated, the party could have a convention or could have a caucus on its own and select a candidate. Now, let's assume they go through that process in May, they select a candidate, or in June, and they pick Judge A. Can Judge A now be put on the ballot as a candidate of the Democratic Party? Yes, if Judge A had already registered to be a candidate in that election. But if Judge B says he's, if he self-identifies as a Democrat, he also goes on the ballot with the J, right? That would be correct in this scenario with the open ballot. But I think, really think Judge Niemeyer's question is going to, if you have a caucus or if you have a convention and you come up with a nominee, one nominee, does the state allow that one nominee to be the nominee of the party on the general election ballot? If there are other people that have self-identified in the same party? I think if you're saying that it would, that the general, that the general election would exclude other candidates. Exclude, what is the general election going to look like? There's seven people that have self-designated a J, and there's one person that's won the party convention that's gotten the Democratic nomination, I'm sorry, D. But there are the other seven people that self-identify as D. How many people go on the general election ballot as D? In this election, you would probably have all seven and one more on the ballot itself. Eight. But that does not, eight. But that does not necessarily infringe on the party's right to choose. But we're just trying to factually understand what's going on here. So, in other words, and there's no allowance for the other, the seven are D, and he, the person that was the choice of the party, gets to call himself Democratic Party nominee. There's no, there's no allowance for that, correct? No, similar to the Grange case, that would be the way it would look. You would have a self-identified candidate. The response is that the ballot is not to identify, that the party could promote it separately. Absolutely. But on the ballot, the way it is set up, all eight would have a D, and there would be no distinction between the nominee and the self-identifying people. That's correct. And so, that confusion, which clearly would probably prompt some confusion, would have to be clarified externally by the party in saying, this is our nominee. And the state's not making any effort at that. That's right. Well, I don't think the state would say who the nominee would be. That would be potentially interference. That's what all those questions were about. Yes. But the, I think when you look at the way the primary works, you've got two competing interests or two different interests that are involved in that. A primary does allow a party to select a nominee, and there's no issue that that is an associational right to always be able to select your nominee. Oh, yes, there is. I would think a party can always select a nominee. They don't have to be provided an election by the state. No, they do not. But the party can have a convention. They can have a caucus. They can get a bill passed to have primaries. And, you know, in the older days, we had almost all conventions. You have today in Iowa, you have a caucus. And in other states, you have a caucus. That's correct, Your Honor. So this idea of you cannot deny the party the right to select somebody, to associate and select somebody, and to advance a candidate. I think that's pretty fundamental, isn't it? That's absolutely fundamental. I mean, that's Jones. Yes, that's Jones, and that's also Timmons. So there are plenty of cases that hold that. And this Act does not interfere with that selection. Well, I understand that point. I mean, the point is there's a distinction between interfering with the party's ability to select a candidate and the right of a state to provide an election or not. And the state may cost the state money to provide an election. I suppose they could say we're not going to have any more primary elections. And nobody can complain about it. But the party can select somebody, and the state's going to have to recognize it and can't interfere with that. That's correct. And that's an associational right. Yes. And I think the winnowing, to Judge Monson's point, to your point, the winnowing that occurs that is reflected on the ballot as only having potentially one person through a primary, that is the state's interest in controlling the nature of the ballot. Yes, but under this system, I quite understand what you're saying. The state is going to, in all likelihood, have more nominees than they would have if they had winnowed down to actually the party nominee being on, only the party nominees being on the ballot. Isn't that correct? So the whole winnowing thing is in reverse. It's not winnowing, it's exploding. There is the potential for definitely more than one person. But on a facial challenge, that is at least all we know right now is the potential. Well, but does it make any difference at all to your position if there were 20 people going to be on the ballot because they had self-identified as members of the Democratic Party people that all 20 would go on the ballot? That doesn't make any difference to your argument, does it? No, no, it does not. They would go on the ballot and you regard this as constitutional, correct? That's correct. So the whole business about winnowing and this is a facial challenge and we may change, that doesn't make any difference to you. You have to take it that there would be 20, 40, 50 people, right? Yes, we would. But you guys aren't even exercising an interest in winnowing. That's right. A state can winnow if they wish. They can. Or a state can leave it open. Now, I think the big crux of where Judge Motz has been asking you questions is if the party chooses to pick its nominee, you have a ballot that consists of non-winnowed self-identifying candidates plus a nominee of the Democratic Party which has the same D. And that confusion would have to be eliminated or de-minimized by the party notices to the public and campaigns and announcements. But that is a level of confusion. And as you point out, they had that identical confusion in Washington State Grange, I think it was. Yes, Your Honor, and I see my time has concluded. Do you mind if I answer your question? Did you have a question? No, I was just going to ask you is what interest do you offer to justify that? We've offered several justifications for that. Just tell me what they are quickly. One, there is a redistricting that is currently being considered. But these people doesn't matter because they're elected across the state, right? They're not elected in districts. The statewide races are not elected in districts. Right, and we only have before us four people, four statewide judges, right? I believe that's correct in the statewide races. So they would all be elected across the state? Yes. That's the only issue that's in front of us now. Everything else has disappeared in the case, right? Well, because it disappeared in the case because the court found that the justification was reasonable and there was no cross appeal for that. For those other people, but not for these four. So I'm asking you the justification for these four statewide ballots, four statewide elections. And, Your Honor, the justification that we discuss on the record was a constitutional amendment to move away potentially for the election of judges. And we also have on the face of this act, which goes to the district court's decision, that there's no severability clause here and all the judges, all judicial races in North Carolina were treated the same. And the district court applied a strict scrutiny, narrow tailoring to that in order to set aside a potential justification for these. I thought you had argued in your brief and maybe to the court below that there would be confusion on the ballot too. Because some would be the product of self-identification and the others would be nominees from primaries. And the public wouldn't know the difference. You're treating them all the same if you have either no primary or a primary for all judges, regardless of statewide election. Did you ever make that argument? I think our vote. I think that Judge Niemeyer is ahead of you. I think that. I thought you made that argument, the confusion of because by not treating the judges the same. The judges the same, yes. But I didn't know that it went the extra step about. Oh, that's what I thought your consequence was, if you don't treat them the same. If you don't treat them the same, then the confusion would be why, as a voter, am I electing some of these judges at this time and some of these judges at different times altogether. I'm sorry if I misstated. Can I have a quick question before you sit down? So going back to the second interest you mentioned about transitioning away from electing judges, how does the Act address that interest? I think it deals with the timing of the issue. The potential confusion, again, if you are looking at on a general election ballot of, I've got potential judges here, but I've also got, we had an amendment earlier to, that could have been put on the, that could be put on the May primary to say we're going to go away. The voters can choose whether they want to elect their judges or not. So it was the issue of both the redistricting and this other consideration that was ongoing to say, this is in the state interest at this time for this year to move the filing period and cancel the primary so that there is no confusion when we get to those issues. All right. Thank you, Your Honors. Thank you, Mr. Wharf. I guess we'll move to Mr. Park. Mr. Park, you only have one minute. Is that what I read? Oh, yes, Your Honor. Can you state your name in one minute? I'll try to quickly. The clerk of the court this morning invited the state to present a short argument, and we just, so I represent the state of North Carolina and the Elections Board, and Mr. Wharf represents the legislative defendants, and we are just here to adopt the arguments made by Mr. Wharf. Why didn't you adopt the arguments when stay was requested? The state was not a party there. Just the two legislative defendants asked for the stay. That's correct. I want to be careful here because I don't want to get into privileged discussions, but it was, to be candid, it was more a timing issue in terms of our internal deliberations and our decision-making at the Attorney General's Office. It seems to me that the state would have a significant interest in saying that they get to select the election laws however they wish to state them, so long as they don't regulate internal party selection processes. Yes, we believe that that's correct. But you haven't seen fit to file, either join in the motion for stay of the district court's order or to file a separate brief in front of us. But we have joined in full in the brief that was filed. And on the stay, I would just say that, you know, a trial has been scheduled for June. What happens on May 8th? If under the status quo. Yes, if we didn't intervene or anything, or if we intervened and joined the statute, what happens on May 8th? There would be a primary election for the local races and no primary for the appellate races, Your Honor. Vice versa. Correct. Correct. Unless there's intervening legislative action to put a constitutional amendment or some other option for merit selection on the ballot. How long does it take to put on a primary election? How much pre-notice do you need? So there is an amount of time that's necessary. I'm happy to submit a supplemental filing. I don't know the exact amount of time. The problem is we're sitting here now in the middle of March, and there's got to be some state machinery that has to be implemented one way or the other. Correct. Correct. And I don't know if we've been given a deadline. The reason we've expedited this argument for today in order to try to accommodate to give the parties some indication so they can govern themselves. But I was just wondering what's the significance of May 8th, because that was the date that was given to us, and that's the date of the primary. But it doesn't spontaneously pop up. You've got to set up election machines. Do you represent the state election board? Yes, I do. Yes. My experience, I used to represent the state election board. They always need more time.  Or it's too late to challenge. So I always used to say to people, your challenge is either not ripe or moot. And I went far on those grounds. So in the opening brief in this court, which we joined in full, we did say that there is time for a primary process post-judgment. And so between the June trial and the election. Let me just ask you one last question, unless my colleagues have a question. You don't have any other interests you want to put forward, do you? No. All the state interests are in here, the brief that the two legislators have filed that you've joined in, right? That's correct. All right. Thank you. Thank you, Mr. Clark. All right. Now we'll have Mr. Wallace. May it please the Court. My name is John Wallace, and I represent the plaintiffs in this action, the North Carolina Democratic Party and the several county parties which have filed the complaint in the action. This case presents the narrow question of whether it is constitutional to have a partisan general election without a primary. Plaintiffs' position in this action is conditional. Well, stick with that a minute. Let's just talk about the issue a minute. Certainly. You're suggesting then that the state has to have a primary in order to have a partisan election? I mean, why couldn't the state eliminate all primaries, all primaries, and let people put their names on with a sufficient level of public support with their name and their self-identification like the court considered in Washington State Grange? Your Honor, as we look at the situation in light of North Carolina's more than 100 years of history with partisan judicial elections, and since 1950. Let's stick with the law. The question is the state does not need to provide a primary election under any constitutional provision. That is up to the state's discretion, right? I agree with that, Your Honor, yes. So if a state decides not to have primary elections, your argument was then they can't have partisan ballots, ballots with D's and R's after the name? That is our contention, Your Honor. Where do you get that? And if we look at the case authority. Let's just stick with that one proposition. Forget the primary now. We have a ballot, and the state says anybody who gets X number of votes on a petition can put their name on a ballot with the letter they identify with on the election ballot. Is that unconstitutional? The state has not done that. No, this is a hypothetical. This is to get to the issue. Yes, and the state does not have the obligation always and in every circumstance to provide a primary in the event that there is a partisan election. Forget the primary. I want you to stick with my hypothetical. My hypothetical is we have no primaries in this state. Are you with me? I'm with you. All right. We have a state that has decided to let people self-identify with parties and put their name on provided they have a sufficient number of signatures to get their name on the ballot so that you can have 10 persons with D after his name for one office and 10 more persons with R after his name for one office. Is that unconstitutional? We would challenge that procedure because it doesn't enable the party to define its association. It doesn't say anything about the party. The party can have a caucus. It can have a primary of its own. It can have a convention. There is nothing that says the state has to give an election to a party. And I don't contend that in the abstract that there must be a primary, but we have a set of circumstances in North Carolina created by a history. Let's not argue the case. Let me get to the principle. I was trying to get to you. The question I still haven't heard from you on is if the state has decided no primaries, the parties can select whomever they want, however they want. We're not going to interfere with that. But when it comes time for the fall election, we're going to put the names of any candidate who puts a sufficient number of names on the petition on the ballot and let that person self-identify. Is that illegal? And we say, Your Honor, that when those names with those Ds next to them appear on the ballot, the state is usurping the party's role in selecting those persons. That's what I thought you were going to say. And now the question is, that is squarely the holding of Washington State Grange. That was the argument that they made. You remember in Washington State Grange, self-identifying people who were not nominated by the party were allowed on the ballot. And the party came in and says, You can't do that. You're interfering with our ability to select. And the Supreme Court said, Not so. The Supreme Court in Washington Grange was addressing what we look at as a very unusual, a hybrid situation in which there was a primary. There was a primary election. Any candidate wishing to appear on that primary election ballot could express a preference for an R or a D or whatever other affiliation they chose on that date. Washington State does not have voter registration by party. So the candidate appearing to file his statement of candidacy could select the R or the D. The name would appear on the ballot, primary election ballot. The party there, I don't know if it was Democratic or Republican Party, objected for the primary reason that you objected to, is that the ballot doesn't recognize as a selected nominee of the party, your person, rather the party's self-identifying. And that was not upheld as a sufficient challenge. In Washington Grange, there was a primary election which took the field of... But it wasn't for the party. The party had an opportunity, as Judge Eagles in the district court found, the party had an opportunity to advocate for those persons with whom it wished to be associated. Do you not still have an opportunity to advocate for whichever candidate you choose under this new scheme through ads and endorsements and campaigning? Can't you do that as a party? There is, of course, an opportunity for the Democratic Party to advocate for a chosen candidate among a field, perhaps, of many. But there is no mechanism within the Democratic Party, no mechanism for selecting a nominee because for 100 years, since 1915, the Democratic Party has complied with North Carolina law and selected its nominees by a primary election. Weren't judicial elections nonpartisan in North Carolina for a time up until relatively recently? Your Honor, there was a period beginning in 1915 in which judicial elections were partisan and primaries were conducted until 2006, until 2016, plus or minus. What did the party do then? Nonpartisan judicial elections. Did you identify a candidate then? The parties participated in selection of candidates in the primary election, that is to say parties, to the extent that they wished to do so, participated in primary elections advocating for one candidate or another. So why can't you do that now? Because there is no primary. And in the fall of general election season, that is, there was no party affiliation on the ballot. But the North Carolina Democratic Party did not challenge that system because the Democratic Party does not contend that it has a right to a primary in connection with a nonpartisan general election, does not contend that it has a right to identify a nominee on a nonpartisan general election ballot. It is when a partisan general election ballot is presented to the voters, which has the D's and the R's, which are... I don't understand. I'm looking right here, and I've read it three times since you've been talking. The Supreme Court said the party complained about the fact that they were nominating people, and the Supreme Court said the primary was not to recognize party nominees, but was to winnow the field. And if the two top contenders were both Democrats, they went on. That's correct. And it doesn't matter whether the party selected them or not. And it says whether the parties nominate their own candidates outside the state-run party is simply irrelevant. And so that's exactly what we're talking about. I think your best case, and it may be a distinction without a real difference, is that in Grange, on the primary election, there was a primary election for starters. There isn't a primary election. And so the party's nominees are out there for everybody to see and to winnow down in a way that advertising maybe isn't the same as that. But Grange goes a far way, as Judge Niemeyer says, in saying that it really doesn't matter even if you have a primary. They had a primary, and you all don't have a primary that did this. But what difference, aside from that difference, what advantage does the primary system in Grange, not just your old primary system, but the primary system in Grange, give you over what you have now? No primary. It's an extraordinary opportunity for the party to educate the voters about the quality of the candidates, to advance the candidate that best represents the party, and to winnow the field of candidates that we don't believe represent the party. On the theory that they're on a ballot. And so the ballot is more publicized than any newspaper. I think more people are going to read and study and you can. But that ballot, the Supreme Court says, to the contrary, the election regulations specifically provide that the primary does not serve to determine the nominees of a political party, but serves to winnow the number of candidates to a final list of two for the general election. And it doesn't matter which party they're from. Correct. Whether the candidates nominate their own parties, they said they could do that, but that's irrelevant. So the primary there was not a party primary, and it wasn't to determine the primary, and the Democratic Party didn't run it. It was a combined where they basically winnowed down. So you could not, as you just argued, have the party say, we're indicating our nomination for this one or that one. You don't even have a vote to suggest that. What you have is a general collection, a preliminary vote. It's like a runoff vote. You have a preliminary vote to winnow the candidates down to two for a particular office, and then the final ballot resolves those two. And the party complained and howled, and they looked to identify them with a D. And the party said, they're not our nominees. They have Ds. Correct. And both of them had Ds, and the Supreme Court said that's irrelevant. And on that challenge, the Supreme Court determined that there was insufficient evidence to determine that the method adopted by the voters in Washington, Initiative 872, which is an eight-page piece of legislation, the Supreme Court determined that there was insufficient information before the court to determine that that created an infringement of First Amendment rights. And what we have here is very different. It's a very, very finite, absolute, unequivocal occurrence that we confront here in May in which, for the first time, we will not have judicial primaries. We know that that's with absent an injunction from this court. We've agreed that primaries are not a constitutional right. So now the question is, by not having judicial primaries, that first step gets you nowhere. The only step that you get is the argument that Judge Motz probed in the beginning, is that you can select your candidates to go on, and those candidates will be competing with other self-identifying candidates on the ballot. And the dilemma, Your Honor, is best discussed and the issue best illuminated in the dissent of Justice Scalia in the Grange case, because he points out very ably that the party label is the property, essentially, of the party. It's in the nature of a trademark. But it's a dissent. See, that's a problem for you. But the majority opinion was an opinion examining this initiative in a facial challenge. You're right, it was. And I will tell you that the most artful illumination of this issue appears in that dissent. We will not find it acceptable if we have a very fine candidate on the ballot in November. We've not had a primary to win of the field, and that candidate is surrounded by others. But it's not your interest to win of the field. You are entitled to select a candidate. It's the state's interest, if they wish to win of the field, to make the ballot smaller. But they've chosen not to win of the field. They've chosen to let anybody who self-identifies. And I don't know why you're not willing to make the argument. I don't think it gets that far. But your argument is we have a candidate who we like, and we've selected him in caucus. And he gets on the ballot, and he's now labeled with a D just as everybody else is. But the Supreme Court said that you don't have a right to have that designation clarified on the ballot. Respectfully, Your Honor, we don't know what the Supreme Court would say confronted with a partisan general election without a primary. We have not seen that situation. But they had Washington Grange. They went on with their letters behind their names. No, there was no primary. But we have no primary. And, yes, it's not a party primary. In other words, they were not selected by a party. They were selected by everybody. But it's also not a party affiliation, or I should say party preference of the two candidates that were the highest vote-getters was to appear on the Washington ballot. But it's not the party registration or the party nomination that appeared on the ballot. It's not a party nominee in the Washington system. We, on every other race, a partisan race on this ballot, are going to have a party nominee with a D next to it with his or her name. And on this collection of candidates, there are going to be a collection of candidate names with Ds. And the voters are not going to have the information to know whether or not those persons are nominees of the Democratic Party or pretenders. And that creates a situation in which we have voter confusion. We have, in our North Carolina system, a prescribed ballot. We don't have the opportunity to explain that. And respectfully, Your Honor, we could nominate a candidate. We could have a convention and nominate a candidate. You can have a caucus. Have a caucus. Nominate a candidate. And then certainly less than 1% of the voters in the state of North Carolina, 1% of the Democrats in the state of North Carolina, would have had a role in selecting that nominee. And then that nominee. There's an existing process in some states already, and that's not unconstitutional. But we have not utilized that system. And as a consequence, we've had the rug pulled out from under us. Is that unconstitutional? I mean, you know, it doesn't. You're arguing some fairness. You're arguing surprise. But the issue before us is whether the First Amendment is violated. And we respectfully contend, Your Honor, that that imposes a burden on our First Amendment rights because it both eliminates our ability to nominate a candidate by choice of the Democrats who have historically chosen our candidate. It hasn't regulated the party's ability to do that. It has reduced our ability and imposed a burden on us, which has created a situation in which a ballot will be presented to voters in November, probably with a long list of candidates with D's next to their names for each of these four offices. The last time we had a nonpartisan Court of Appeals ballot, special election, single seat on the North Carolina Court of Appeals, this was in the fall of 2014, we had 19 candidates on the ballot. And there is not sufficient opportunity for candidates or parties to communicate to voters about the qualifications of 19 judiciaries. Was that unconstitutional? That was not unconstitutional because there was a circumstance there that rendered it justifiable for the state to conduct the election in that matter, and it was a nonpartisan general election. Well, as your colleague from the state has reminded us, this case, we're here and you're here on a preliminary injunction. This case goes to trial. You say that there is a burden, and if you can establish that it is sufficient burden, it will prevail, right? And you seem to think that there is sufficient burden here. Correct, Your Honor. We have that opportunity in trial in June. What's the date of the trial, member? I'm sorry, Your Honor. What's the date of the trial? June 7, Your Honor. Seven? Yes, Your Honor. Of course, if the court wanted and the parties could, you could make it sooner. The date could be set sooner. We had hoped for an earlier date, but we had not begun discovery because the – Look at this hearing. It wasn't scheduled until less than a month ago. Correct, Your Honor. This action was filed in December. The legislation which abolished party primaries was enacted in October of last year. So this is all a recent development. And, Your Honor, I want to just – Your Honors, I want to just observe that in the universe of case authority that we're dealing with, and we don't have – there is not a case, and Judge Eagles found as much. There is not a case that addresses this situation. This factual situation. That's true. But in general, cases are not factually identical. No. You're an experienced lawyer. You know that. But in this universe of cases, we have Marcellus and we have the Husted case from the Sixth Circuit, and those are cases in which there was a party primary and a nonpartisan general election. Those were challenged, found to be constitutional statutory schemes, nonpartisan general elections. We have Jones and we have Grange. Those are the West Coast hybrid style process. Except Jones, I mean, your brief tended to confuse these cases very much. Jones recognized that this was an effort to regulate the primary. It regulated how the party made selections and said they had to admit nonparty members into the party to vote. And the Supreme Court said, you can't do that. Correct. They were regulating the party selection process. Here, this is the states deciding whether to provide an election, which it doesn't have to do constitutionally, for primaries of judges. And they eliminated the primary for all judges, mainly on the ground that the local judges had redistricting, and to split them up would cause confusion. That was their justification. But they don't probably have to have one for eliminating a primary. They may have to have one in justifying the burden that it may cause in the fall on the ballot. But in Marcellus, we said that that was pretty low burden. In this situation, we confront a fall general election ballot with no way to identify on that ballot our nominee, with no process preceding it, in accordance with the history of North Carolina, that provides us with a nominee chosen by Democrats in North Carolina. And then we are faced with the likelihood of having numerous Democrats or persons identifying as Democrats on that ballot. This is a quote from Washington State. The First Amendment does not give political parties a right to have their nominees designated as such on the ballot. And they did recognize that there were nominees, I mean, there were partisans on the ballot there, with the same party preference indicated. And the party said, hold it, they're not our preferences. And the Supreme Court said, that's irrelevant. You can put up your own if you want. So those principles seem to be, you're constantly pushing against those principles, saying that the state has to indicate that you have designated a nominee. And, Your Honor, in the Washington system, there was, and this is in the record in the argument, in connection with the argument in the Supreme Court, that there was an extensive effort underway in the state of Washington to educate voters about that system because it was different, because it didn't. You're free to do that. You're free to do that. We don't have a mechanism within the state of North Carolina to prepare ballots which explain to voters. The ballots did not explain, clearly did not. You can go on the television, you can give speeches, you can send out flyers, you can conduct meetings. All of these things can be done. You can announce a candidate if you have them. You can put flyers around the Democratic Party's selected nominee is Judge Jones and put his qualifications. All of this can be done, and no one has barred you from doing that. And certainly we may not be barred from doing that, but that doesn't diminish the damage that is done in the polling place. By the way, Washington State votes primarily by mail, so explanations can come to voters with their ballots. In North Carolina, we vote either an early vote, one-stop site, or we vote on Election Day. We have lengthy ballots, usually optical scan ballots, not an opportunity for extensive explanation to voters of the rather inconsistent approach taken for a partisan general election for judicial candidates from that approach taken from all other candidates. That's the moment at which voters are confronted with the numerous candidates bearing a D or an R by their name without any indication, without any opportunity to know that those candidates were chosen by their party. Wasn't there a campaign that led up to the election? I'm sorry? Isn't there a campaign that leads up to the election? Well, certainly there will be a campaign, but it is... And everybody has different resources in the campaign, and everybody can promote his own candidacy and... But the dilution of the votes of a candidate that might have been a party primary nominee by the votes of many other candidates who simply self-identified and who appear on the ballot dilutes the mark of the Democratic Party, the D that appears on that ballot. And we respectfully contend that the party suffers an injury which is greater, a burden which is substantially greater than the justification which has been offered by the state. All right. Thank you. Thank you. You have a few minutes, Mr. Worf. Thank you, Your Honors. Briefly, the... Judge Nehmeyer, you were reading in Washington State Grange, I believe several lines below that, is the quote that parties do not gain such a right being to control the ballot simply because the state affords candidates the opportunity to indicate their party preference on the ballot. It's basically the same. This jurisprudence actually is not just Washington Grange. It's Timmins. It goes all the way back. The ballot is not meant to convey information. That's correct, Your Honor. And what we would also show is that as far as the concern about educating the voters, what Mr. Wallace has talked about is there may be a period for education between a filing date and his desired method of choice via primary, and that would run from February generally to May. But he has the opportunity, any party does, from the filing period in June to the election ballot in November to educate the voters as however they see fit. Do the people who get on the ballot have to present a petition with a sufficient number of names on it, signatures? In other words, how does a person get on the ballot under this process? How does a person running for judge get on the ballot? In this particular act, the way that they do that is they sign a candidacy form saying that they would like to run for judge, and that is verified by the county board to make sure that their residency requirement is correct for a local race that wouldn't necessarily need for a state race. It's also selecting, verifying that their party, self-identified party affiliation is the same as on their voter registration. And under this act, both anybody who self-identified with a party or was unaffiliated with a party would have the same access to the ballot. They don't collect signatures. They just say they want to be a candidate. If they're a registered voter, they're on the ballot. In this act, yes. Ordinarily, an unaffiliated person would be on the petition. I don't know. Seems like a lot do. A lot come in front of us and want to be deciding the case. We might change places. I would be one of those who would say please. But the last point that I would want to make, Your Honor, is that the parties can and always do have the ability under the administrative code in North Carolina to give out placards that feature the faces and names of their nominees, and those are fine to take into the ballot booth with you. And the parties have, to my knowledge, always done that. The Republicans will give out their nominees. The Democrats will give out theirs. The Libertarians can give out theirs. And those people that want to know who the party nominee is has that information sitting there right in front of them, the same as they have in every single race that has ever happened in North Carolina. That it? Yes. Just to conclude, thank you, Your Honor, and we believe the trial court erred in granting the preliminary injunction. So the whole issue before us is just a preliminary injunction. It will not decide the merits one way or the other. The trial still has to occur, right? This is just a preliminary injunction issue. That's right. That's all that's before the court, Your Honor. Thank you. We'll adjourn until tomorrow morning and come down to Greek Council. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Stephanie D. Thacker